UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

```
_____
                                   )
PRECISE INNOVATIONS, LLC,          )
                                   )
                 Plaintiff,        )
                                   )
          v.                       )
                                   )
AEROSPACE ENGINEERING AND          )
SUPPORT, INC.,                     )
RUSTY ORAM,                        )
JOHN DOES I-X, ROE ENTITIES I-X,   )   CIVIL ACTION
                                   )   No. 4:21-00420-WGY
                                   )
                 Defendants.       )
_____)
                                   )
AEROSPACE ENGINEERING AND          )
SUPPORT, INC., and                 )
RUSTY ORAM,                        )
                                   )
                 Counterclaimants, )
                                   )
          v.                       )
                                   )
PRECISE INNOVATIONS, LLC,          )
                                   )
          Counterclaim Defendant.  )
_____)
```

YOUNG, D.J.[1]                                    July 9, 2024

**FINDINGS OF FACT AND RULINGS OF LAW**

I.   **INTRODUCTION**

Precise Innovations, LLC ("Precise"), is an Idaho company specializing in computer numerical control machining and manufacturing.  Pl.'s Proposed Findings of Fact and Conclusions of Law ("Pl.'s FOF/COL") ¶¶ 1-4, ECF No. 117.  Aerospace

---

[1] Of the District of Massachusetts, sitting by designation.

Engineering and Support, Inc. ("Aerospace"), is a Utah corporation that manufactures parts for aircraft, primarily used by government agencies.  Id. ¶¶ 6-7.  Rusty Oram ("Oram") is a former shareholder of Aerospace and was Aerospace's Director of Operations.  Id. ¶¶ 8-9.

This case concerns a claim and counterclaim that arose out of the parties' course of dealing.  See Compl., ECF No. 1-2; see Countercl., ECF No. 6.  Precise filed its complaint for breach of contract on June 17, 2021, seeking damages for several unpaid invoices due for machining work performed.  Def.'s Proposed Findings of Facts and Conclusions of Law ("Def.'s FOF/COL") ¶ 1, ECF No. 117; see also Compl., ECF No. 1-2.  Aerospace filed a counterclaim for tortious interference with a contract, alleging both that Precise used improper means to obtain Aerospace's contract with Hurricane Aerospace Solutions ("Hurricane"), and that three former Aerospace employees improperly used information obtained, while working for Aerospace, for Precise's benefit in order to compete against Aerospace.  Countercl. ¶¶ 6-41, ECF No. 6.

On February 16, 2023, the Court allowed in part and denied in part Precise's motion for summary judgment.  Order, ECF No. 85.  The Court ruled that a contract existed between Precise and Aerospace, that the unpaid invoices constituted a breach of this contract, and that Oram is obligated under a personal guaranty,

leaving for trial the issue of the amount of damages to be awarded.  Id. at 2.  In addition, the Court denied summary judgment as to the tortious interference with contract claim involving Hurricane.  Id. at 3.

The Court held a three-day bench trial and made brief findings of fact and rulings of law in summary fashion at the conclusion of trial, reserving the right to enter more detailed findings and rulings.  Minute Entry, ECF No. 121.  On April 4, 2024, the Court entered a judgment in favor of Precise in the amount of $201,126.04 and against Aerospace concerning its counterclaim.  Judgment, ECF No. 126.  On March 12, 2024, Precise filed a motion for allowance of attorneys' fees.  Pl.'s Mot. Attorneys' Fees, ECF No. 122.  The parties fully briefed the issue.  Pl.'s Mem. Supp. Mot. Attorneys' Fees ("Pl.'s Mem."), ECF No. 122-1; Def.'s Opp'n Pl.'s Mot. Attorneys' Fees ("Def.'s Opp'n"), ECF No. 123; Pl.'s Reply Def.'s Opp'n Mot. Attorneys' Fees ("Pl.'s Reply"), ECF No. 127.

The Court now makes the following more extensive findings of facts and rulings of law.

## II.  FINDINGS OF FACTS

### A.   The Balance Owed to Precise and Possible Deductions

Precise and Aerospace have conducted business together for several years and entertained a good working relationship. Pl.'s FOF/COL ¶ 13.  Precise machined parts as requested by

Aerospace and invoiced Aerospace after completing the work and delivering the parts.  Id. ¶ 14.  Aerospace used these machined parts in fulfillment of contracts with other companies.  Id. ¶ 15.

Aerospace has had financial difficulties in the last few years and eventually started to fall behind on the amounts due to Precise before it completely stopped paying invoices due. Id. ¶¶ 22-28, 55.

### 1.    The Balance Owed to Precise from Unpaid Invoices

At trial, Ryan Burton ("Burton"), founder and managing member of Precise and a former employee of Aerospace, testified that the aggregate amount owed to Precise by Aerospace, specific to unpaid invoices, was the principal balance of $154,959.23, as reflected on Plaintiff's Trial Exhibit 18.  Id. ¶¶ 12, 35-37. Burton testified, without contradiction, that the document reflected the dates and original amounts of all unpaid invoices starting in March 2019, the dates and amounts of payments received, and the amounts outstanding.  Id. ¶ 35.

### 2.    The Purchase of the Lathe

At trial, Lacey Remke ("Remke"), Aerospace's president, testified regarding an email she sent to Burton on October 2,

2020, where she wrote that Aerospace was selling Precise a lathe[2] at the price of $30,000.00.  Id. ¶¶ 11, 40.  Remke also testified that Aerospace planned to deduct $14,453.58 from this $30,000 purchase price to account for both $5,000 worth of work Precise completed for Aerospace and $9,453.58 in accrued interest from Aerospace's unpaid invoices from January 2018 through March 2019.  Pl.'s Tr. Ex. 14.  The Court finds, by a fair preponderance of the evidence, this email to be the final and accurate iteration of the agreement between Precise and Aerospace concerning the sale of the lathe and that Precise therefore still owes Aerospace the sum of $15,546.42.

### 3.  The Alleged Defects

Aerospace argues that the sum due to Precise ought be reduced because it was invoiced for products that were either not received or defective.  Pl.'s FOF/COL ¶ 53.  The Court finds the record insufficient to determine whether any defects existed or whether any products were not received by Aerospace.  The Court therefore finds that the sum due to Precise cannot be reduced by Aerospace's claim of defective or missing products.

---

[2] A lathe is "a machine in which work is rotated about a horizontal axis and shaped by a fixed tool."  Lathe - Definition, Merriam-Webster, https://www.merriam-webster.com/dictionary/lathe (last visited on July 2, 2024).

### 4.   The Interest Rate

Aerospace has had a cash flow and profitability problem within the last few years, resulting in a recurring difficulty paying vendors, including Precise.  Pl.'s FOF/COL ¶¶ 22-23. Aerospace fell behind on the payment of invoices due to Precise, and both companies had multiple discussions about Aerospace's unpaid balance and ways to get it paid.  Id. ¶¶ 28-29.  There was a direct relationship between what Aerospace could borrow each month against its line of credit and what showed on Aerospace's financials.  Id. ¶ 30.  Aerospace could not obtain financing for its ongoing purchasing needs with such large accounts payable on its books.  Id.  Precise agreed to allow Aerospace to move the balance it owed to Precise from short-term to long-term debt, which allowed Aerospace to qualify for ongoing financing and credit with its bank.  Id. ¶ 31.

On December 23, 2019, Precise and Aerospace signed a "Business Agreement and Personal Guaranty".  Pl.'s Tr. Ex. 1. Precise and Aerospace agreed that Aerospace would pay a 0.007% interest on unpaid invoices after 60 days.  Id.  Oram signed a personal guaranty that he would jointly, severally, and unconditionally guarantee to pay and be liable for all obligations due to Precise by Aerospace.  Id.  The business agreement does not specify whether the interest was to be compounded monthly or annually.  The Court finds that Burton

drafted the agreement in his capacity as Precise's managing
member, and that the agreement should be construed against
Precise according to the general cannon of contract
construction.  Restatement (Second) of Contracts § 206 (1981);
Straub v. Smith, 145 Idaho 65, 69 (2007).  The Court finds,
however, that in this case, Precise conferred an important
consideration on Aerospace, which was facing extreme financial
difficulties -- the bank would have terminated Aerospace's
operations were it not for this agreement.

Moreover, the Court finds that the interest rate was
compounded monthly, as this has support in the record and is
undisputed by Aerospace.  Indeed, in several different letters,
records, and emails, Precise and Aerospace discussed the
remaining balance owed to Precise, and all amounts discussed are
consistent with a 0.007% per month interest rate.  See Pl.'s Tr.
Exs. 12-17.  Aerospace did not dispute those amounts in any of
these exchanges.  Id.  Considering the record and the
circumstance that Precise conferred a significant benefit on
Aerospace, the Court finds that the business agreement is to be
construed as providing for a 0.007% interest rate to be
compounded monthly, that it was so compounded, and that
Aerospace knew that it would be responsible for this interest.
The Court finds that this interest rate is to be applied on all
unpaid invoices starting in March 2019.

[7]

**B.   Aerospace's Claim of Tortious Interference**

Hurricane awarded Aerospace a contract, as of April 6, 2020, for a torque tube project consisting of the production of parts by Aerospace for Hurricane ("the Hurricane contract"). Def.'s FOF/COL ¶ 31.

Burton, Chad Bitton ("Bitton"), and Ryan Dearden ("Dearden") worked for Aerospace when Hurricane awarded Aerospace the contract.  Id. ¶¶ 34-43.  Burton is now a managing member of Precise.  Am. Joint Final Pretrial Conference Statement 5, ECF No. 87.  Burton was promoted to Vice President at Aerospace in January 2020 and terminated in July 2020.  Id. Bitton was, and still is, one of Aerospace's shareholders.  Id. In the summer of 2020, he was employed as an Estimator/Project Manager at Aerospace and his employment ended on October 2, 2020.  Id.  Dearden was also, and still is, one of Aerospace's shareholders.  Id.  In the summer of 2020, he was employed as an Estimator/Project Manager for Aerospace; his employment ended on November 2, 2020.  Id.  In November 2020 Burton, Bitton, and Dearden started working together at Precise.  Def.'s FOF/COL ¶¶ 34-43.

Leandra M. Cain ("Cain") is Hurricane's founder and president.  Pl.'s FOF/COL ¶ 58.  While working towards the completion of the Hurricane contract, Aerospace had great financial difficulties that led to delivery delays and to an

inability to commit to starting production of the project.  Id.
¶¶ 61-66.  On October 9, 2020, Cain sent Remke an email
expressing her concerns regarding Aerospace's ability to perform
the contract, flagging the risks associated with Aerospace's
difficulties, and asking for a cancellation of the purchase
order.  Def.'s Tr. Ex. 3.  Aerospace, represented by Remke,
agreed to the cancellation.  Id.

Burton and Cain began discussing a business relationship
between Precise and Hurricane in August 2020.  Def.'s FOF/COL ¶
49.  At trial, Burton testified that Cain contacted him and
asked if Precise could perform the torque tube project at the
same price as Aerospace and that, prior to this conversation, he
had no knowledge of the Hurricane contract.  Pl.'s FOF/COL ¶ 78.
Burton agreed to take over the Hurricane contract from Aerospace
for the same price.  Def.'s FOF/COL ¶ 52.  Hurricane sought a
contract modification with the federal government and awarded
the contract to Precise.  Id. ¶¶ 74,77.  The federal government
approved the contract modification on October 16, 2020.  Id. ¶
79.  Burton testified at trial that such a contract modification
process can be approved in as little as a few days.  Dearden and
Biton began working at Precise after the Hurricane contract was
cancelled and awarded to Precise, and both testified that they
did not try to influence Hurricane on Precise's behalf.  Pl.'s
FOF/COL ¶ 88-89.

## III. RULINGS OF LAW

As a preliminary matter, the Court rules that the law of the case is the law of Idaho.  Based upon the above findings of fact, the Court rules as matter of law the following:

### A.   Precise's Claim for Breach of Contract

#### 1.   Precise Is Entitled to Damages for Aerospace's Breach of Contract.

Under Idaho law, the elements of breach of contract include the existence of a contract, a breach of that contract, and resulting damages.  Safaris Unlimited, LLC v. Von Jones, 158 Idaho 846, 850 (2015) (citing Mosell Equities, LLC v. Berryhill & Co., 154 Idaho 269, 278 (2013)).  The Court previously granted Precise partial summary judgment for breach of contract on unpaid invoices but left unresolved the amount of damages. Order, ECF No. 85.  The Court concludes that Precise has been damaged in the principal amount of $154,959.43, corresponding to unpaid invoices.  From this sum, $15,546.42 must be deducted, corresponding to the remaining balance for the sale of the lathe still owed by Precise to Aerospace.  The Court finds that the parties agreed to charge Aerospace interest beginning in March 2019 on outstanding balances owed on individual invoices in the amount of 0.007% compounded monthly.  After applying Aerospace's offset to the principal amount owed beginning in March 2019 and according to the accounting principle of "first in, first out,"

the Court concludes that the total amount of damages due and owed to Precise, is $201,126.04.  <u>See</u> Judgment, ECF No. 126.

## 2. **Rusty Oram is Jointly and Severely Liable to Precise.**

The Court previously granted summary judgment on Precise's breach of guaranty claim against Oram.  Order, ECF No. 85. Having determined, <u>supra</u>, that Aerospace owes Precise $201,126.04, the Court determines that Oram is jointly and severely liable to Precise in the amount of $201,126.04.  <u>Id.</u>

## B. **Precise Failed to Prove a Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Under Idaho law, there is an implied covenant of good faith and fair dealing in every contract, which requires "the parties to perform, in good faith, the obligations required by their agreement." <u>Silicon Int'l Ore, LLC</u> v. <u>Monsanto Co.</u>, 155 Idaho 538, 552 (2013) (quoting <u>Washington Federal Sav.</u> v. <u>Van Engelen</u>, 153 Idaho 648, 656 (2012)).  A violation of the covenant occurs only when "either party . . . violates, nullifies or significantly impairs any benefit of the . . . contract . . . ." <u>Bushi</u> v. <u>Sage Health Care, PLLC</u>, 146 Idaho 764, 768 (2009) (citing <u>Idaho First Nat'l Bank</u> v. <u>Bliss Valley Foods</u>, 121 Idaho 266, 288 (1991)).  Thus, the implied covenant places a good faith obligation on each party to take reasonable measures to ensure that the other party obtains the benefits of the agreement.  <u>Wade Baker & Sons Farms</u> v. <u>Corporation of the</u>

Presiding Bishop of Church of Jesus Christ of Latter-Day Saints,
136 Idaho 922, 926 (Ct. App. 2002).

Here, Aerospace merely failed to perform its contract with
Precise, which is insufficient to violate the covenant of good
faith and fair dealing.  Precise did not prove a breach of the
implied covenant, particularly as the record shows that
Aerospace stopped paying invoices due to a lack of funds, not
due to a lack of will.  See Pl.'s Tr. Ex. 17 ("It's not for lack
of trying or wanting to pay.  We just haven't had the funds.").

The Court, therefore, concludes that Aerospace did not
breach the implied covenant of good faith and fair dealing.

**C.   Precise Failed to Prove its Fraud Claim.**

Under Idaho law, in order to prove fraud, the plaintiff
must establish that (1) the defendant stated a fact to the
plaintiff, (2) the statement was false, (3) the statement was
material, (4) the defendant either knew the statement was false
or was unaware of whether the statement was true at the time the
statement was made, (5) the plaintiff did not know that the
statement was false, (6) the defendant intended for the
plaintiff to rely upon the statement and act upon it in a manner
reasonably contemplated, (7) the plaintiff did rely upon the
truth of the statement, (8) the plaintiff's reliance was
reasonable under all of the circumstances, (9) the plaintiff
suffered damages proximately caused by reliance on the false

[12]

statement, and, also, (10) the nature and extent of the damages to the plaintiff, and the amount thereof.  <u>Samuel</u> v. <u>Hepworth, Nungester & Lezamiz, Inc.</u>, 134 Idaho 84, 89 (2000).

Here, the Court is not the least persuaded that there was any fraud on the part of Aerospace.

Precise is therefore not entitled to any damages sought on a fraud tort theory.

**D.   Precise Is Not Entitled to Unjust Enrichment Recovery.**

"Unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." <u>Vanderford Co., Inc.</u> v. <u>Knudson</u>, 144 Idaho 547, 557 (2007).  The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof.  <u>Idaho Lumber, Inc.</u> v. <u>Buck</u>, 109 Idaho 737, 745, (Ct. App. 1985).  Unjust enrichment is an equitable remedy and as such, an alternative to the contract remedy.

Here, Precise has prevailed on the contract remedy.

The Court therefore concludes that Precise is not entitled to recovery on the equitable unjust enrichment theory.

**E.   Aerospace Failed to Prove its Tortious Interference with Contract Claim.**

Under Idaho law, tortious interference requires proof of four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach.  Bybee v. Isaac, 145 Idaho 251, 259 (2008) (citing Bliss Valley Foods, Inc., 121 Idaho at 283-84).

Here, the contract at issue is the Hurricane contract, and though Aerospace did show its existence, Aerospace failed to prove the other elements of its tortious interference claim.  An essential element of a tortious interference claim is the intentional interference with contractual relations.  Id.  The record does not support a conclusion that, by a fair preponderance of the evidence, Precise, nor any of its agents, intentionally interfered with the contract between Hurricane and Aerospace.  The termination of the Hurricane contract appears to the Court to have been the unfettered determination of Hurricane's officers.  Indeed, the evidence presented at trial showed that Hurricane's leadership was concerned about Aerospace's delays and financial instability prior to the cancellation of the contract and expressed those concerns in the email asking for the cancellation.  Pl.'s FOF/COL 19-21.

[14]

Moreover, the record is also insufficient to show by a preponderance of the evidence that Precise had knowledge of the Hurricane contract.  Id. 19.  Indeed, the evidence presented at trial showed that Burton was the only possible former employee of Aerospace at Precise that could have had knowledge of the Hurricane contract.  He testified to the contrary, however, and Aerospace failed to present any contradicting evidence.  Id. Finally, Aerospace failed to show any injury.  Id. 21.

The Court, therefore, concludes that Aerospace failed to prove its tortious interference with contract claim.

**F.   Precise's Motion for Allowance of Attorneys' Fees**

Precise argues that because the Court has ruled that it is the prevailing party and is entitled to costs, Precise is entitled to reasonable attorneys' fees.  Pl.'s Mem. 2.  Precise supports its claim by presenting to the Court the Idaho Code § 12-120(3), which provides that in "any civil action to recover on [a] . . . contract relating to the purchase or sale of goods . . . the prevailing party shall be allowed a reasonable attorney's fee . . . to be taxed and collected as costs."  Id. Aerospace opposes the motion, arguing first that the December 2019 Business Agreement capped the maximum amount of attorneys' fees that can be awarded by this Court at twenty five percent (25%) of the unpaid balance.  Def.'s Opp'n 2.  Second, Aerospace argues that its counterclaim for tortious interference with

contract is a tort claim and therefore unrelated to a commercial transaction, and thus, a claim for which attorneys' fees cannot be awarded.  Id. 4-5.  In addition, Aerospace argues that the amount of attorneys' fees requested by Precise is exorbitant and that the award ought be limited to reasonable fees.  Id. 5-6.

### 1.    Whether Attorneys' Fees Related to Aerospace's Tort Counterclaim Are Allowed

Under Idaho law, the prevailing party in a civil action involving a commercial transaction based on a contract is entitled to an award of reasonable attorneys' fees.  I.C. § 12-120(3).  The test whether a commercial transaction is involved in a claim is whether the commercial transaction is the gravamen of the claim.  Willie v. Board of Trustees, 138 Idaho 131, 136 (2002); Brower v. E.I. DuPont De Nemours & Co., 117 Idaho 780, 784 (1990).  A gravamen is "the material or significant part of a grievance or complaint."  Merriam Webster's Collegiate Dictionary 509 (10th ed. 1993).  To "determine whether the significant part of a claim is a commercial transaction, the court must analyze whether a commercial transaction (1) is integral to the claim and (2) constitutes the basis of the party's theory of recovery on that claim."  Sims v. Jacobson, 342 P.3d 907, 912 (2015) (citing Great Plains Equip., Inc. v. Northwest Pipeline Corp., 136 Idaho 466, 471 (2001)).

That rule requires courts to consider the gravamen of each claim within the lawsuit and "[w]hen various statutory and common law claims are separable, [courts] should bifurcate the claims and award fees pursuant to § 12-120(3) only on the commercial transaction." Sims, 342 P.3d at 9112 (citing Willie, 138 Idaho at 136); see also Brooks v. Gigray Ranches, Inc., 128 Idaho 72, 77-79 (1996). This rule, however, ought not be understood as requiring that the gravamen of the entire lawsuit be a commercial transaction. Sims, 342 P.3d at 911; Brooks, 126 Idaho at 79. Accordingly, the Supreme Court of Idaho affirmed a district court's decision to award costs and reasonable attorneys' fees to the prevailing party but only to the extent the fees were related to the defense of a breach of contract claim. Willie, 138 Idaho at 136-37. The district court, however, concluded that the prevailing party was not entitled to attorneys' fees for fees related to the defense of a public policy and constitution claim. Id. at 136.

When a lawsuit comprises different claims, the memorandum of costs needs to be clear enough to permit the isolation of fees attributable to the contract claim from the fees attributable to the defense of a claim not related to a commercial transaction. Brooks, 126 Idaho at 77-79. If this

distinction cannot be made by the court, a claim for attorneys' fees cannot be granted.  Id. at 79.[3]

Here, the matter before the Court is for a claim for breach of contract and for a counterclaim for tortious interference with contract.  The gravamen of the breach of contract claim is without doubt a commercial transaction, as Aerospace breached its duty to pay invoices after Precise had machined parts pursuant to purchase orders issued by Aerospace.  The Court has ruled that Precise Innovations is the prevailing party and is entitled to costs.  Judgment, ECF No. 126; see supra Section III. A.  Because I.C. § 12-120(3) categorizes attorney's fees in contract disputes regarding commercial transactions as costs, Precise is entitled to reasonable attorney's fees.  Aerospace's counterclaim, however, is a tort claim related to the alleged interference of Precise and its agents in a contract between

---

[3] The Brooks court stated:
The allegation of a contract of the type covered in I.C. § 12-120(3) was sufficient to award fees, even though the claim was combined with other theories that would not have triggered application of the statute. That is analogous to this case in which Gigray Ranches prevailed on the contract claim brought against it. However, the denial of fees here resulted from the fact that the fees attributable to the contract claim could not be separated from the conversion claim, which the district court found outside the scope of I.C. § 12-120(3).
Brooks, 126 Idaho at 79.

Aerospace and Hurricane.  The gravamen of this claim is not a commercial transaction.

Therefore, the Court allows in part and denies in part Precise's motion for allowance of attorneys' fees, ECF No. 122. Precise is entitled to reasonable attorneys' fees attributable to its breach of contract claim but is not entitled to attorneys' fees attributable to the defense of Aerospace's tortious interference with contract claim.  The Court leaves it to the parties, within 7 days of the date hereof, to supply an amended memorandum of costs identifying attorneys' fees attributable only to the breach of contract claim.

To aid the parties, the Court determines that the rates charged by Precise's attorney are reasonable, <u>provided</u> that Precise can represent under oath that it had paid such amounts.

### 2.   Whether the Business Agreement Capped the Attorneys' Fees Award

Aerospace also opposes Precise's motion for allowance of attorneys' fees on the basis of the December 2019 Business Agreement.  Def.'s Opp'n 2-3.  The agreement states in relevant part the following:

> In consideration of the granting and the extension of credit by PRECISE INNOVATIONS ("Vendor") to AEROSPACE ENGINEERING & SUPPORT INC. ("Buyer"), the undersigned ("Guarantor") does/do jointly, severally and unconditionally guarantee to pay and be liable for all obligations due Vendor by Buyer, including collection costs and/or attorney's fees of 25% of the unpaid balance.

Pl.'s Tr. Ex. 1.  Aerospace claims that per the unambiguous language of the agreement, the maximum amount of attorneys' fees that can be awarded by the Court is capped at twenty five percent (25%) of the unpaid balance.  Def.'s Opp'n 2.

When a contract is clear and unambiguous, it is the best evidence of the intent of the parties and therefore, any determination of its meaning and its legal effect are questions of law.  Minidoka County for Use and Benefit of Detweiler Bros., Inc. v. Krieger, 88 Idaho 395, 416 (1964); Madrid v. Roth, 134 Idaho 802, 805 (Ct. App. 2000).

Here, Aerospace's argument about a contractual limitation is misplaced.  The Court agrees that the terms of the agreement are unambiguous; however, this provision only concerns the guaranty that Rusty Oram signed in his personal capacity.  Indeed, the provision is under the title "personal guaranty" and the agreement is signed by Rusty Oram as a "guarantor," which distinguishes him from Aerospace and his role in the company.  The provision therefore only limits Rusty Oram's liability concerning payment of attorneys' fees.

The Court therefore concludes that the business agreement does not limit Aerospace's liability toward costs including attorneys' fees.

[20]

## IV.  ORDER

In light of the foregoing Findings of Fact and Conclusions of Law, it is hereby **ORDERED** that the total amount of the damages due and owing to Precise, as of February 28, 2024, is $201,126.04, bearing interest at Idaho's statutory rate from that date forward.  <u>See</u> Judgment, ECF No. 126.  Defendants Aerospace and Oram are jointly and severally liable.  Statutory costs, including attorneys' fees attributable to the breach of contract claim, are awarded to Precise.   The Court leaves it to the parties, within 7 days of the date hereof, to supply an amended memorandum of costs identifying attorneys' fees attributable only to the breach of contract claim.  Aerospace's claim for tortious interference with contract is not proved and therefore dismissed.

**SO ORDERED.**


<u>/s/ William G. Young </u>
WILLIAM G. YOUNG
JUDGE OF THE UNITED
STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.