UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

```
_____
                                     )
PRECISE INNOVATIONS, LLC,            )
                                     )
                 Plaintiff,          )
                                     )
        v.                           )
                                     )
AEROSPACE ENGINEERING AND            )
SUPPORT, INC., AND                   )
RUSTY ORAM,                          )
                                     )   CIVIL ACTION
                                     )   No. 4:21-00420-WGY
                                     )
                 Defendants.         )
_____)
```

YOUNG, D.J.[1]                              October 8, 2024

**MEMORANDUM AND ORDER**

I.   **INTRODUCTION**

Precise Innovations, LLC ("Precise"), is an Idaho company specializing in computer numerical control machining and manufacturing.  Findings of Fact and Conclusions of Law ("FOFCOL") 1, ECF No. 128.  Aerospace Engineering and Support, Inc. ("Aerospace"), is a Utah corporation that manufactures parts for aircraft, primarily used by government agencies.  Id. at 2.  Rusty Oram ("Oram") is a former shareholder of Aerospace and was Aerospace's Director of Operations.  Id.

_____

[1] Of the District of Massachusetts, sitting by designation.

Precise brought claims for breach of contract, fraud, unjust enrichment, and breach of the implied covenant of good faith and fair dealing, seeking damages for unpaid invoices due for machining work performed.  Id.  Aerospace brought a tortious interference counterclaim.  Id.

Precise succeeded only on its breach of contract claim and Aerospace failed to prove its tortious interference counterclaim.  See generally id.  This memorandum concerns Precise's request for attorneys' fees.

## II.  PROCEDURAL HISTORY

On June 17, 2021, Precise filed a complaint, bringing several claims against Aerospace: breach of contract,[2] breach of guaranty, breach of implied covenant of good faith and fair dealing, fraud, and unjust enrichment.  Compl. ¶¶ 63-89, ECF No. 1-2.  On November 19, 2021, Aerospace filed a counterclaim against Precise for tortious interference with a contract.  Countercl. ¶¶ 6-41, ECF No. 6.

On February 16, 2023, the Court allowed in part and denied in part Precise's motion for summary judgment.  Order, ECF No. 85.  The Court ruled in favor of Precise on its breach of contract claim, but left for trial the issue of the amount of

---

[2] With respect to its claim for breach of contract, Precise sought "damages for several unpaid invoices due for machining work performed."  Compl., ECF No. 1-2.

damages to be awarded.[3]  Id. at 2.  With respect to Aerospace's tortious interference with contract claim, the Court denied summary judgment.  Id. at 3.  Thus, at that stage, the following claims remained for trial: the amount of damages (and, relatedly, Precise's unjust enrichment claim), Precise's fraud claim, Precise's breach of the implied covenant of good faith and fair dealing claim, and Aerospace's tortious interference claim.  Updated Opp'n 5.  See generally Pl.'s Trial Br., ECF No. 112.

In late February, the Court held a three-day bench trial and made brief findings of fact and rulings of law, reserving the right to enter more detailed findings and rulings.  Minute Entry, ECF No. 119; Minute Entry, ECF No. 120; Minute Entry, ECF No. 121.

On March 12, 2024, Precise filed a motion for allowance of attorneys' fees.  Pl.'s Mot. Attorneys' Fees ("Mot."), ECF No. 122.  The parties fully briefed the issue.  Pl.'s Mem. Supp. Mot. Attorneys' Fees ("Pl.'s Mem."), ECF No. 122-1; Def.'s Opp'n Pl.'s Mot. Attorneys' Fees ("Def.'s Opp'n"), ECF No. 123; Pl.'s

---

[3] With respect to the unjust enrichment claim, this Court held in its summary judgment order that this claim is "wrapped up in the ultimate question of damages . . . ." and denied summary judgment on this claim.  Order 2.

Reply Def.'s Opp'n Mot. Attorneys' Fees ("Pl.'s Reply"), ECF No. 127.[4]

On April 4, 2024, the Court entered a judgment in favor of Precise in the amount of $201,126.04 and against Aerospace concerning its counterclaim.  J., ECF No. 126.

On July 9, 2024, this Court entered its Finding of Facts and Conclusions of Law.  See generally FOFCOL.  The Court ruled that Precise failed to prove a breach of implied covenant of good faith and fair dealing, failed to prove its fraud claim, and failed to prove unjust enrichment.[5]  Id. at 11-13.  The Court also ruled that Aerospace failed to prove its tortious interference with contract claim.  Id. at 14.

With respect to Precise's motion for attorney's fees, this Court ruled that Precise was entitled to reasonable attorneys' fees attributable to its **breach of contract claim** but not to its attorneys' fees attributable to the defense of Aerospace's tortious interference with contract claim.  FOFCOL 19.  The Court requested an amended memorandum of costs identifying

———————————

[4] In its initial motion, Precise requested **$203,378.87** in attorneys' fees.  Mot. at 2.

[5] The Court ruled that Precise failed to prove its unjust enrichment claim because it prevailed on its breach of contract claim.  FOFCOL 13.  For the fraud claim, the Court was not convinced that Aerospace engaged in any fraudulent conduct.  Id. With respect to the alleged breach of good faith and fair dealing, it observed that "Aerospace stopped paying invoices due to lack of funds, not due to lack of a will."  Id. at 12.

attorneys' fees specific **only** to the breach of contract claim. Id. The Court determined that the rates charged by Precise's counsel were reasonable if Precise represented under oath that "it had paid such amounts." Id.

The Court also made a ruling as to whether the parties' December 2019 Business Agreement ("Business Agreement") capped Precise's award of attorney's fees. Id. at 19-20. The Court ruled that the Business Agreement capped **only** Rusty Oram's "liability concerning payment of attorneys' fees" -- not Aerospace's liability. Id. It also ruled that Oram and Aerospace are jointly and severally liable. Id. at 11, 19-21.

On July 16, 2024, Precise filed a Supplemental Memorandum in support of its motion for attorneys' fees, in which it purports to reduce its claim to account for "only those fees that are relevant to the contractual matters successfully adjudicated by Precise in this case." Supp. Mem. Supp. Fees ("Updated Mem.") 2, ECF No. 129. The parties fully briefed the issue in light of Precise's revised calculation of fees. Objection to Pl.'s Updated Claim for Attorney's Fees ("Updated Opp'n"), ECF No. 130; Reply to Objection to Pl.'s Updated Claim for Attorney's Fees ("Updated Reply"), ECF No. 132.[6]

---

[6] In this revised memorandum, Precise is now requesting **$139,670.67** in attorneys' fees. Updated Mem. 2.

**III. ANALYSIS**

After a review of Precise's attorneys' billing entries, this Court awards a total of **$62,360.50** in fees and costs: **$20,485.00** in attorneys' fees for Beard St. Clair Gaffney PA; **$41,830.50** in attorneys' fees for Echo Hawk & Olsen, PPLC; and **$45.00** in costs for the recording fee for the deed of trust.[7] Oram's personal liability ought be capped at **$50,281.51**.

This Court rejects Aerospace's arguments that Precise's failure to submit an affidavit stating that it has paid these fees is fatal to its fees' motion. It also rejects Aerospace's arguments that there ought be a fee reduction because Precise hired multiple law firms for this litigation.

**A. Precise Sufficiently Pared Down its Fees to Only Cover Fees Associated with the Breach of Contract Claim.**

Aerospace argues that because there were five causes of action determined at trial, Precise's initial request of $203,378.87 ought be reduced by 4/5ths, considering Precise was

---

[7] Precise submitted fees related to three depositions (Leandra Cain, Ryan Dearden, and Ryan Burton), as well as a recording fee for a deed of trust. Davis Aff., Ex. B, ECF No. 129-1. This Court denies costs related to the depositions, as all three deponents provided at least some testimony related to the counterclaim. See Minute Entry, ECF No. 120 (showing that Dearden and Burton testified at trial with respect to the counterclaim); FOFCOL 8 (noting that Cain was the Founder of Hurricane, which relates to the counterclaim). It awards costs for the deed of trust recording fee ($45) because this cost seems to relate to the writ of attachment.

only awarded fees on one claim -- its breach of contract claim.[8]
Updated Opp'n 8.  Aerospace argues that Precise's generic time
entries are not specific to the breach of contract claim.  Id.
at 5-6.  It also argues that because the breach of contract
claim "required much less factual and legal analysis than the
tortious interference claim[,] . . . the reduction should be
more significant than what [Precise] is asserting."  Id. at 6.

Precise attacks Aerospace's arguments by suggesting that it
is erroneous for Aerospace to assume that Precise spent equal
time on each claim.  Reply 3.  Precise maintains, contrary to
Aerospace, that the "tortious interference claim was not
complex, either factually or legally."  Id.  Precise also states
that the "vast majority of [its] legal fees were related to the
breach of contract claims," as the other claims "were alternate
claims to its breach of contract claim" and Precise focused on
damages at trial after winning on its breach of contract claim
at summary judgment.  Id. at 3-4.  Precise also notes that it
updated certain time entries to reflect only time spent on the
contract claim, and it provided affidavits stated that these
fees are related to the breach of contract claim and
corresponding damages.  Id. at 4.

### 1.   Applicable Law

---

[8] That would amount to an award of approximately $40,000.

"Awarding attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." Day v. Idaho Transp. Dep't, 533 P.3d 1227, 1245 (2023) (citing Idaho Transp. Dep't v. Ascorp, Inc., 357 P.3d 863, 865 (2015); Smith v. Mitton, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004)).

"When a lawsuit comprises different claims, the memorandum of costs needs to be clear enough to permit the isolation of fees attributable to the contract claim from the fees attributable to the defense of a claim not related to a commercial transaction." Precise Innovations, LLC v. Aerospace Eng'g & Support, Inc., No. CV 4:21-00420-WGY, 2024 WL 3342486, at *6 (D. Idaho July 9, 2024) (citing Brooks v. Gigray Ranches, Inc., 128 Idaho 72, 77-79 (1996)). "If this distinction cannot be made by the court, a claim for attorneys' fees cannot be granted." Id. (citing Brooks, 128 Idaho at 79).

A court can deny the award of attorney's fees if: (1) the two claims (one justifying attorney's fees and the other which does not) are "inseparably intertwined"; or (2) the party requesting fees failed to apportion fees between the claims on which it was awarded fees and the claims on which it was not awarded fees. See Day, 533 P.3d at 1246.

"[T]he prevailing party must apportion the fees between the claim upon which it was entitled to recover attorney fees and

8

the claim upon which it was not." Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC, 303 P.3d 171, 175 (2013); Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc., 516 P.3d 73, 90 (2022). "Where fees were not apportioned between a claim that qualifies under I.C. § 12-120(3)[9] and one that does not, no fees are to be awarded." Rockefeller v. Grabow, 39 P.3d 577, 585 (2001); Breckenridge Prop. Fund 2016, LLC, 516 P.3d 73 at 89.

A court may award fees for work performed for both claims for which the party is entitled fees and the claims for which it is not entitled to fees if "the efforts expended would have been much the same had the [claims it was not awarded fees for] never been raised." See Millenkamp v. Davisco Foods Int'l, Inc., No. CV03-439-S-EJL, 2007 WL 844880, at *4 (D. Idaho Mar. 16, 2007).[10]

---

[9] This Court awarded fees for the breach of contract claim under this provision, but not the defense of the tortious interference with contract claim. FOFCOL 15-19.

[10] In Millenkamp, the party challenging the award of fees argued that the prevailing party cannot recover fees for a negligence claim on which it did not prevail and that, more generally, section 12-120(3) does not allow recovery for tort claims. Millenkamp, 2007 WL 844880, at *4. The prevailing party argued that "work expended prior to the dismissal of their negligence claims is properly included because the work was not focused solely on the negligence claims but also on the issues regarding the breach of warranty[]" -- the claim on which plaintiffs prevailed and were allowed fees under section 12-120(3). Id. The Court agreed with the party requesting fees because "though true that ultimately the Millenkamps prevailed on their contract claims and not the tort theories, the efforts expended would have been much the same had the tort claims never

A court may refrain from awarding fees when the billing "memo entries describing the work are too generalized to provide any real information as to what work the attorney was engaged in[.]" Id. at *5-6 (refraining to award fees for general billing entries, such as "interviews and conferences," "review and assemble documents," "preparation" or entries lacking "some description of the work performed specific to this case"); see also Lefever v. A.H. Hoffman, Inc., No. CV 04-311 S LMB, 2006 WL 2385301, at *2 (D. Idaho Aug. 17, 2006) (stating that fees **cannot** be awarded for a motion for summary judgment prepared for both a claim on which the party was entitled to fees -- a breach of contract claim -- and one on which it was not entitled to fees -- a negligence claim -- when the entry did not allocate how much time was spent on each claim).

### 2. Application

Aerospace does not contend that the breach of contract claim and defense of the tortious interference claim are "inseparably intertwined" -- instead, the parties' arguments focus on whether Precise did in fact appropriately and accurately apportion the fees between these claims.[11]

---

been raised." Id. The Court did, however, exclude those entries that were specific to the negligence claim. Id.

[11] These claims do not appear to be intertwined. Precise's breach of contract claim and resulting damages pertain to Aerospace's unpaid invoices for Precise's completion of work and

10

After this Court instructed Precise to submit fees only pertaining to the breach of contract claim, Precise submitted reduced fees and purported to tailor these fees only to the breach of contract claim.  It also provided affidavits stating that the fees submitted relate only to the breach of contract claim.  Davis Aff. ¶¶ 5, 6, ECF No. 129-1 (stating that the billing entries relate "to [Precise's] cause of action for breach of contract and proving damages flowing therefrom"); Preston Aff. ¶ 11, ECF No. 129-1 (stating that the billing entries were "attributable to the breach of contract claim awarded to Precise").

Upon review of the billing entries, this Court disagrees with the Precise apportionment but still awards some of the requested fees for those entries that reasonably can be attributed to the breach of contract claim after looking at the entries in the context of the record in this action.  See Alsco, Inc. v. Fatty's Bar, LLC, 461 P.3d 798, 816 (2020) (rejecting arguments that the district court abused its discretion in awarding fees when the court apportioned the fees itself based on its observations at trial and the record); id. ("The district

---

delivery of parts agreed to be performed, FOFCOL 3-4, whereas Aerospace's tortious interference with contract claim relates to whether Precise interfered with a contract between Hurricane, a third party, and Aerospace for a separate project, id. at 8-9.

court did not abuse its discretion in the way it chose to
equitably apportion attorney fees between the two defendants.").
While this Court, could deny fees outright,[12] that would neither
be fair and nor equitable.  Rather, this Court ought apportion
the fees based upon the billing entries provided by Precise.

### a.   Categorizing the Fees

The Court has reviewed each billing entry and categorized
each one by type. Fees are awarded to the following categories,
which are further explained below: Breach of Contract, General,
and Prior to Counterclaim.  Fees are not awarded to the
following categories, which are further explained below: Too
General / Block Billing, Involves Tortious Interference. The
Spreadsheet attached to this opinion as Appendix A (docketed but
not published) sets forth the Court's determination as to each
billing entry.

### b.   Billing Entries - - Fees Awarded

First, and most obviously, the Court **awards** fees for any
entries that specifically state that they are only for the
breach of contract claim or damages, or filings associated with

---

[12] In 616, the Supreme Court of Idaho upheld the district
court's refusal to award fees when the party requesting the fees
"failed to apportion [its] fees so that the district court could
award attorneys fees appropriately under section 12-120(3)" as
the district court is not required sua sponte to award fees when
the party requesting fees did not explain how or why fees ought
be apportioned.  616 Inc. v. Mae Properties, LLC, 524 P.3d 889,
905 (2023).

the work performed that clearly relate only to the breach of contract claim (or related damages) upon analyzing the referenced filing (**Category: Breach of Contract**).

The Court also awards fees for the entries as to work that had to have been performed even if had the non-prevailing claims (fraud, unjust enrichment, breach of fair dealing), and Aerospace's tortious interference of contract claim, not been brought (**Category: General**).  This includes, but is not limited to, entries pertaining to the following filings, actions, or events: pre-judgment writ of attachment (and corresponding order to show cause, deed of trust, and draft default judgment for non-response to the motion); summons; appearing at pre-trial and status conferences; logistics for scheduling those conferences and trial; a motion to reopen case; stipulations to extend deadlines; corporate disclosure statements; preparing litigation and discovery plans; notices of appearance.

Lastly, this Court awards fees for any work performed prior to the filing of the counterclaim (**Category: Prior to Counterclaim**).  Aerospace filed its counterclaim on November 19, 2021, Counterclaim, ECF No. 6, and Precise filed its complaint against Aerospace for recovery of the unpaid invoices in state court (before it was removed) on June 17, 2021, Notice of Removal. Ex. A, State Court Docket, ECF No. 1-1.  While the work performed by Precise prior to the filing of the counterclaim may

plausibly include work performed on Precise's other claims upon
which it did not prevail (unjust enrichment, good faith and fair
dealing, and fraud), this Court ought presume that this work
would have been performed even if Precise only brought the
breach of contract claim.  The Court ought agree with Precise
that recovering for Aerospace's unpaid invoices lies at the
heart of Precise's complaint (and thus, their main claim was the
breach of contract claim).  The unjust enrichment claim, fraud
claim, and good faith and fair dealing claim were alternative
theories to recover the same balance due.  In its pre-trial
brief, Precise requested the same recovery, the contract balance
due (plus interest and consequential damages), across each
theory of recovery.[13]  Aerospace itself conceded that Precise's
unjust enrichment claim and fraud claim are both similar to its
breach of contract claim.[14]  Thus, this Court awards fees for all
work performed prior to Aerospace's counterclaim because the

---

[13] Pl.'s Tr. Brief 5, 7, ECF No. 112 (describing its fraud
and breach of good faith and fair dealing claims as "alternative
theor[ies]" to its breach of contract claim); id. at 5, 7-9
(requesting the same amount of damages for its unjust enrichment
claim, fraud claim, and breach of good faith and fair dealing
claim).
[14] Def.'s Opp'n to Pl.'s Tr. Brief 4, ECF No. 116 (stating
fraud claim is "boot-strapped" or "restated breach of contract"
claim); id. at 5 ("Plaintiff's unjust enrichment claim employs a
similar analysis as the breach of contract claim and is subject
to all of the same evaluation and defenses as the breach of
contract claim.").

work would have been performed even had the breach of contract claim been the only claim brought.

### c.   Billing Entries - - Fees Not Awarded

The Court does not award fees for entries that reference filings that, upon checking the filing, show that they involved, at least in part, the tortious interference claim.[15]  This includes work related to certain briefs, like the pre-trial memorandum, pre-trial statements, and summary judgment briefing; the original motion for attorney's fees; and other miscellaneous filings that, when checked, related at least in part to the tortious interference claim **(Category: Involves Tortious Interference)**.

The Court also does not award fees for entries that are too general and could reasonably include work performed on the tortious interference claim or block-billed entries (the merged entries for which it is not clear whether the work only pertained to the breach of contract claim) (**Category: Too General/Block Billing**).[16]  This includes entries pertaining to

---

[15] All of the entries that, on their face, reference the tortious inference claim (or defendant's causes of action) have been excluded upon the filing of Precise's amended memorandum of costs.

[16] If a billing narrative had tasks that clearly pertained to the "general" or "breach of contract" category, and the same entry also had a more general sub-entry such as "meeting with PD", the Court awards fees for those entries. Even though this is technically an instance of block-billing, it can reasonably be inferred that the meeting, for example, pertained to the same

the following filings, actions, or events: general case status
updates; general strategy calls; meetings or communications with
the client, court, or other attorneys (when it is not specified,
or cannot reasonably be ascertained, what the meeting was
about); calls to discuss discovery requests or work towards
general discovery tasks; general trial preparation; witness or
deposition preparation or logistics (when it is not specified as
to what issue the preparation is in relation to); general
document review; initial and supplemental disclosures, and their
corresponding notices; pre-trial statement; work performed in
relation to mediation or settlement; work preparing the judgment
form.[17]

**B. Precise's Failure to Submit an Affidavit Stating that It
Paid These All of These Fees Is Not Fatal to its Motion for
Attorney's Fees.**

In its Findings of Fact and Conclusions of Law, this Court
stated the following: "To aid the parties, the Court determines
that the rates charged by Precise's attorney are reasonable,
provided that Precise can represent under oath that it had paid

---

topic as the other sub-entries in that overall billing
narrative.
    [17] Fees were awarded for Precise's calculation of the amount
of judgment.  Although the proposed judgment form is not on the
docket, it is safe to presume that any calculations Precise made
with respect to the judgment form would be for damages in
relation to its breach of contract claim –– not the tortious
interference claim (Precise would have just said no liability on
the counterclaim).

16

such amounts."  FOFCOL 19.  In support of its motion for fees,
Precise submitted an Affidavit from Ryan Burton,[18] which states
that "Precise has incurred and subsequently paid, **or is in the
process of paying**, the incurred and invoiced amounts for legal
services as rendered by counsels in this matter."  Burton Aff. ¶
2, ECF No. 129-3 (emphasis added).  It also submits declarations
from its attorneys that these invoices are owed by Precise.
Reply 2; Decl. Davis ¶ 5, ECF No. 129-1; Decl. Preston ¶ 8, ECF
No. 129-2 ("The fee arrangement mandates Precise's
responsibility for attorney and paralegal compensation, and for
various direct costs associated with legal representation.").

Aerospace argues that Precise's submission is not compliant
with this Court's directive, as Precise failed to show that they
actually paid the attorneys' fees requested.  Updated Opp'n 2.
Aerospace further argues that allowing Precise to recover fees
without showing what Precise has actually paid would not be
"fair" to Aerospace because Precise may be overstating its fees.
Id. at 3.

Precise argues that the Court's order was only concerned
with "addressing the reasonableness of Precise's attorney's
fees" and the Court wanted to "prevent a windfall to Precise for
attorney fees it was not obligated to pay."  Updated Reply 2.

---

[18] Burton is a manager member of Precise.  Burton Aff. ¶ 1.

This Court ought agree with Precise -- it is enough that Precise submitted a signed affidavit that it has paid some, but not all, of the fees and that it represented under oath that Precise has incurred these fees.

**C. The Business Agreement Caps the Fees Awarded Against Oram.**

Aerospace argues that because this Court held that Oram's liability for fees was subject to a 25% cap as set forth in the Business Agreement, "any judgment entered in this matter including attorney's fees should separate between the attorneys' fees liability of Aerospace and the attorneys' fees liability of Rusty Oram . . . ."  Updated Opp'n 4.

The parties do not dispute that the Business Agreement caps Oram's attorney's fees at 25% of the contract balance ($201,126.04), and thus the maximum amount of fees that can be awarded against Oram is $50,281.51.  Updated Reply 2 (agreeing that Oram's liability on fees is capped); Opp'n 4; FOFCOL 19-20.

Because Oram and Aerospace are jointly and severally liable, it is not up to the Court to "separate" how much Oram ought pay and how much Aerospace ought pay.  The Court's ruling awards fees against both Aerospace and Oram, acknowledges that they are jointly and severally liable, and caps Oram's liability at $50,281.51.

**D. Whether the Fees Ought Be Reduced Because Precise Hired Two Law Firms**

Aerospace argues that it is a "problem" that there are two law firms requesting attorney's fees because this case did not require "two attorneys" or two law firms.  Opp'n 7.  While Aerospace argues that this led to "redundancies and significant overlap in the fees requested", it fails to identify these redundancies for the Court.  See id.

Precise argues that it is not unusual for two firms to work on a case, especially because Patrick Davis worked on the case while at Echo Hawk and Oslen, PLLC and continued to work on the case after he switched firms.  Updated Reply 3.  Precise also states that Aerospace acknowledged that only one attorney "attend[ed] depositions, hearings or trial."  Id. (quoting Updated Opp'n 7).

Because Aerospace fails to point out how the use of two firms led to redundancies or specify these alleged overlaps in the fees requested, and concedes the Precise, at least at times, only involved one attorney in depositions, hearings, or trials, this Court rejects Aerospace's arguments.

## IV. CONCLUSION

For the foregoing reasons, this Court awards **$62,360.50** to Precise in fees and costs.

**SO ORDERED.**

19

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
    JUDGE
    of the
UNITED STATES[19]

---

[19] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.